**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANNA SCHULZ,**<br>*Plaintiff,*<br>**v.**<br>**TAX NETWORK USA, INC.,**<br>*Defendant.* | **Civil Case No.**<br>**Complaint and Jury Demand** |

## COMPLAINT

Plaintiff, Anna Schulz ("Plaintiff" or "Mrs. Schulz"), by and through her attorneys, Kimmel & Silverman, P.C., hereby files this Complaint and alleges the following against Defendant, Tax Network USA, Inc. ("Tax Network" or "Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.* ("UTPCPL"), and common law fraud.

### JURISDICTION AND VENUE

2. At all times relevant hereto, Plaintiff resided in Bucks and Montgomery Counties within the Commonwealth of Pennsylvania.

3. Defendant Tax Network is headquartered in the State of California.

4. Accordingly, there is complete diversity between the Parties.

5. Plaintiff seeks compensatory damages, statutory damages, treble/punitive damages and attorneys' fees and costs, which in their totality, are likely to exceed $75,000.00.

6. Accordingly, diversity jurisdiction exists under 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the Commonwealth of Pennsylvania and because the occurrences from which Plaintiff's causes of action arise took place in the Commonwealth of Pennsylvania.

8. Defendant purposefully availed itself to the Commonwealth of Pennsylvania when agreeing to provide tax services to a Pennsylvania citizen.

9. Accordingly, personal jurisdiction is established.

10. Moreover, where Plaintiff has been a resident of Bucks and Montgomery Counties throughout the relevant time period and experienced the harms arising from Defendant's conduct described herein, a substantial portion of the acts and omissions described herein occurred within this District.

11. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

12. Plaintiff Anna Schulz is a natural person who currently resides in Gilbertsville, Pennsylvania and previously resided in Quakertown, Pennsylvania.

13. Mrs. Schulz is represented by her daughter Christina Pritchard, who has power-of-attorney for Plaintiff and has been authorized to act as Plaintiff's attorney-in-fact for financial matters. A true and correct copy of that power-of-attorney form is attached as **Exhibit A.**

14. Defendant Tax Network USA is a Delaware corporation whose principal place of business is 15760 Ventura Blvd, Ste 1400, Encino, CA 91436.

15. At all times relevant, Defendant acted through its representatives, agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

16. Prior to August of 2019, Plaintiff was married to Mr. Horst Schulz ("Mr. Schulz").

17. Through the duration of their marriage and until Mr. Schulz's passing, Mr. Schulz had handled all of his and Plaintiff's personal and business finances.

18. In August of 2019, Mr. Schulz passed away.

19. At the time of her husband's passing, Mrs. Schulz was 74 years old.

20. Around that same time, Mrs. Schulz began to experience cognitive decline, which has continued through the present.

21. Mrs. Schulz is now 81 years old and lives with her daughter and power-of-attorney, Christina Pritchard.

22. Mrs. Schulz's lack of financial sophistication and cognitive condition has rendered it challenging for her to pay her tax obligations.

23. Plaintiff had been making monthly payments to the IRS of approximately $1,000.00 per month.

24. Nonetheless, by March of 2024, Plaintiff's tax liability had grown to exceed $60,000.

25. That month, March 2024, Plaintiff began communicating with Defendant, Tax Network USA to assist her with her tax obligation.

26. At that time, Plaintiff was almost 80 years-old and living on her own in Quakertown.

27. During the consultation process, Tax Network represented to Mrs. Schulz that it would be able to fully resolve Plaintiff's tax liability without significant involvement on her part.

28. Tax Network told Plaintiff to stop making the monthly payments to the IRS she had been making.

29. Tax Network claims Plaintiff signed an IRS Form 2848 Power-of-Attorney form authorizing Tax Network to act as its POA on March 18, 2024. A true and correct copy of that

purported POA form sent to the IRS, redacted to protect personal identifying information, is attached as **Exhibit B**.

30. However, the alleged signature does not match the actual signature of Mrs. Schulz. Below, Plaintiff presents her actual signature to the left, contrasted with the "signature" featured on the Tax Network POA:




Plaintiff's signature




Signature featured on POA to Tax Network

31. Moreover, the date "3-18-24" listed next to Schulz's alleged signature appears to be in the same handwriting as the date listed next to the Tax Network employees' signatures. *See, Id.* Plaintiff copies an image of the date entry featured next to Plaintiff's "signature" contrasted with the date entry next to that of the Tax Network employees:




Date entry next to Plaintiff's "signature"




Date entry next to Tax Network employees signatures.

32. For those reasons, Ms. Pritchard is concerned that her mother's name was improperly "signed" by Tax Network on a document submitted to the federal government.[1]

33. Regardless of whether the March 2024 Power-of-Attorney was truly signed by Mrs. Schulz, on August 16, 2024, Mrs. Schulz did sign an "Additional Services Agreement" with Tax Network. A copy of that Agreement is attached as **Exhibit C.**

34. The Service Agreement prescribed that Defendant would provide tax relief services, including *inter alia* negotiating Plaintiff's tax obligations with the IRS in exchange for payment to Defendant. *See* Ex. C.

35. Specifically, the Service Agreement provided that Defendant would render a number of tax resolution services, including but not limited to:

> D) Form 911 Submission and CDP Hearings: This service encompasses the filing of an Application for Taxpayer Assistance Order (Form 911), and representation in Collection Due Process (CDP) hearings with a view to relieving the client from the financial burden precipitated by IRS collection actions. […]
>
> H) Case Monitoring and Power of Attorney: Our firm offers dedicated case management and Power of Attorney (POA) services to ensure the effective handling of your case and prompt response to all communications from the IRS. […]
>
> J) Tax Filing for Tax years: Our firm will assist in the preparation and filing of the client's tax returns for all the years required to move forward with resolution. This service aims to ensure full compliance with tax laws and minimize potential liabilities and penalties.

*See* Ex. C, pp. 1-2.

36. For its services, Defendant charged Plaintiff $17,500.00. *See* Ex. C.

[1] The signature on the IRS Power-of-Attorney form does appear to bear some similarity to Mrs. Schulz's Docu-Sign signature featured on the August 2024 Service Agreement with Tax Network. *See, infra,* Exhibit C. Where the IRS Power-of-Attorney features an ink signature which looks dramatically distinct from Mrs. Schulz's actual ink signature and the date appears to be in the same handwriting as the date for the Tax Network employees, Ms. Pritchard is concerned Tax Network employee(s) may have attempted to emulate the signature from the Docu-Sign signature for Mrs. Schulz on the IRS POA form.

37. Plaintiff financed this cost through Equity Sales Finance, Inc., agreeing to make thirty-six monthly payments of $586.10 for a total of $20,919.33. *See* **Exhibit C-1** (appended to Ex. C), Statement from Equity Sales Finance, Inc. dated August 18, 2024.

38. As discussed above, Plaintiff believed and understood that Defendant was working to resolve her tax issues with the IRS, and stopped making payments to the IRS in accordance with Defendant's instructions.

39. In reality, Tax Network took no meaningful action on Plaintiff's behalf as it relates to the IRS, failed to notify Plaintiff that her case had effectively stalled, and failed to obtain the additional information or documents it needed from her.

40. Furthermore, despite Tax Network's knowledge Plaintiff was elderly and clearly struggling to provide the requisite documents, Tax Network did not instruct her to seek assistance from family members, nor did it contact such persons themselves.

41. Where Plaintiff's health and cognitive abilities continued to decline, her daughter and power-of-attorney, Christina Pritchard, assumed responsibility for Plaintiff's finances in July of 2025.

42. After learning of the engagement between Tax Network and Plaintiff, Ms. Pritchard contacted Tax Network by phone on or around December 5, 2025.

43. During that communication, and several others around that time, Tax Network claimed Plaintiff's file became stagnant when she failed to provide necessary documents to Tax Network.

44. After Pritchard investigated the status of her mother's delinquent taxes on her own, she was dismayed to learn Plaintiff's tax liability now exceeded $112,000 by March of 2026.

45. In other words, rather than seeing an elimination or reduction in her tax liability, Mrs. Schulz's tax liability almost doubled after she paid Tax Network $17,500 to serve as her tax advocate.

46. Tax Network reiterated to Pritchard that Mrs. Schulz should not make further payments to the IRS to reduce her liability. A true and correct copy of an email from Tax Network to Pritchard dated March 2, 2026 is attached as **Exhibit D**.

47. Ms. Pritchard continued to correspond with Tax Network in a series of repetitive and unproductive exchanges, where Tax Network repeatedly assured Pritchard it would pursue an Offer-In-Compromise to resolve Plaintiff's tax liability with the IRS. *See* **Exhibit E**, emails between Ms. Pritchard and Defendant dated February through March 2026.

48. Between March and June of 2026, Ms. Pritchard continued to engage in repetitive and unproductive conversations with Tax Network, where various Tax Network employees/representatives requested documents Pritchard has previously provided.

49. Alarmed at the lack of progress and the recurrent circular conversations, on June 14, 2026, Plaintiff and Ms. Pritchard's financial advisor admonished Tax Network and demanded information about the alleged offers in compromise submitted to the IRS: "I have about had it with you asking MY CLIENTS FOR INFORMATION OVER AND OVER AGAIN. Your window of opportunity before I get Governor Shapiro's office involved is closing quickly." A true and correct copy of that email from Plaintiff's financial advisor is attached as **Exhibit F.**

50. Only then did Tax Network finally advise it "completed the full [Offer-In-Compromise] packet, and it is scheduled to be mailed out this week." A true and correct copy of that correspondence from Tax Network dated June 16, 2026 is attached as **Exhibit G.**

51. Disturbingly, in late July 2026, Plaintiff received correspondence from the IRS advising that the Offer-In-Compromise package was rejected and closed because was not properly

completed by Tax Network. A true and correct copy of that correspondence is attached as **Exhibit H.**

52. Thereafter, Tax Network did not contact Ms. Pritchard, explain the issue, or apologize for any mistakes on its part. Tax Network also failed to take responsibility for the general inaction on its part during the two and a half years Tax Network was purporting to act on Plaintiff's behalf to resolve her tax liability.

53. Ultimately, Ms. Pritchard was forced to pay a fee out of her pocket and resubmit the application on her own, which was ultimately accepted by the IRS on July 30, 2026.

54. In short, Tax Network charged an elderly woman over $17,500 (which cost her over $20,000 with finance fees) and provided no services of value.

55. In addition to the absence of any services of value, Tax Network caused Plaintiff to incur tens of thousands of dollars of additional IRS penalties during the two and a half years it was supposedly acting as her tax advocate.

56. The substantive work for which Tax Network was paid, was ultimately done by Mrs. Schulz's daughter, rather than Tax Network.

57. As a result of Defendant's acts and omissions, Plaintiff suffered significant financial harms, including the payment made to Tax Network, interest paid to the finance company, accrual of additional tax liability, loss of funds, loss of time, stress, anxiety, and other pecuniary and non-pecuniary harms.

## COUNT I
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 P.S. § 201–1, *et. seq.*

58. Plaintiff restates, re-alleges, and incorporates herein by reference the preceding paragraphs as though the same were fully set forth herein.

59. Plaintiff is a "consumer" as defined by § 201-2(2) of the UTPCPL.

60. Defendant is a "person" as defined by § 201-2(2) of the UTPCPL.

61. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. § 201 *et seq.*, provides a cause of action for any consumer against a person who engages in "unfair or deceptive trade acts or practices", including "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi).

62. Moreover, the UTPCPL prohibits businesses from "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. C.S. § 201-2(4)(xiv).

63. Defendant engaged in fraudulent or deceptive conduct when it represented to Plaintiff that it would be able to resolve Plaintiff's tax liability in its entirety, and do so without significant involvement or participation from Plaintiff.

64. Defendant engaged in unfair, fraudulent and/or deceptive conduct when it induced Plaintiff to enter into the Service Agreement and remit payment in full while she was incapable of understanding the services being offered.

65. Defendant engaged in unfair, fraudulent and/or deceptive conduct when it failed to render the services for which Plaintiff paid.

66. Defendant engaged in unfair, fraudulent and/or deceptive conduct when it failed to take necessary action to prevent Plaintiff from incurring additional tax liability during the time it was purportedly acting as her tax advocate.

67. Furthermore, if in fact, Defendant forged or otherwise improperly "signed" Plaintiff's name on the IRS Power-of-Attorney form, that would constitute a fraudulent, deceptive and unfair act.

68. As a result of Defendant's unfair and deceptive conduct, Plaintiff suffered damages, including the loss of funds, further accrual of tax liability, loss of time, stress, anxiety and aggravation.

69. Defendant's conduct was willful and outrageous, rendering treble damages appropriate.

70. Plaintiff is entitled to damages, treble damages and reasonable attorneys' fees and costs as prescribed by the UTPCPL.

**WHEREFORE**, Plaintiff requests the Court enter judgment in her favor for compensatory damages, treble damages, attorneys' fees and costs, and any other relief the Court renders appropriate.

**COUNT II**
**FRAUD**

71. Plaintiff restates, re-alleges and incorporates herein by reference the preceding paragraphs as if same were fully set forth herein.

72. Defendant represented to Plaintiff it would act as her tax advocate and negotiate her tax liability with the IRS, as well as actively monitoring her tax liability and assisting her with tax filings each year.

73. Plaintiff relied on those representations and entered into an agreement for services with Defendant, and paid Defendant $17,500.

74. Including finance charges, Plaintiff paid over $20,000 based on Defendant's representations.

75. Defendant's representations were false. In fact, Defendant did not even send a proper offer of compromise at any time during the two-plus years of the tax-advocate relationship.

76. Rather, only after a third-party threatened to involve the Pennsylvania Governor did Defendant send an incomplete and improperly submitted offer on Plaintiff's behalf, which Plaintiff's daughter had to correct and re-submit on her own.

77. Furthermore, Defendant did not help Plaintiff with her taxes, nor did it actively monitor her tax liability, which grew dramatically during the time Defendant was supposedly assisting Plaintiff with her tax liability.

78. As a result of Defendant's knowing misrepresentations upon which Plaintiff relied to her detriment, Plaintiff suffered damages in the form of the $20,000 paid for Defendant's supposed services as well as tens of thousands of dollars in additional tax liability, penalties and fees.

79. Defendant's fraudulent representations and conduct were outrageous, shocking and reckless, entitling Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff requests the Court enter judgment in her favor for compensatory damages, incidental and punitive damages, as well as any other relief the Court renders appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, Anna Schulz, demands a jury trial in this case.

DATED: October 5, 2026

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

/s/ Jacob U. Ginsburg
Jacob U. Ginsburg, Esq.
PA ID No. 311908
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile (215) 540-8817
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com